### IN THE UNITED STATES DISTRICT COURT FOR THE
### WESTERN DISTRICT OF OKLAHOMA

HARLAN EVANS,                          )
                                       )
                    Petitioner,        )
                                       )
        vs.                            )         Case No. CIV-08-711-HE
                                       )
GREG PROVINCE,                         )
                                       )
                    Respondent         )

### REPORT AND RECOMMENDATION

Petitioner, a state prisoner appearing pro se, brings this action pursuant to 28 U.S.C.

§ 2254, seeking habeas relief from his state court convictions.  United States District Judge

Joe Heaton referred this matter to the undersigned Magistrate Judge for initial proceedings

consistent with 28 U.S.C. § 636(b)(1)(B).  A response to the petition has been filed, as well

as a reply.  Thus, the matter is at issue and ready for disposition. For the following reasons,

it is recommended that the petition be denied.

By this action, Petitioner challenges his convictions following a jury trial on the

following counts: (1) conspiracy to traffic methamphetamine; (2)  unlawful use of a

communication facility; (3) conspiracy to traffic marijuana; (4) trafficking in

methamphetamine; (5)  unlawful distribution of marijuana; and (6) trafficking in

methamphetamine. He was sentenced to fifty years imprisonment, five years imprisonment,

fifty years imprisonment, ninety years imprisonment, ninety years imprisonment, and life

imprisonment respectively, with each sentence to be served consecutively to the others.  Case

No. CF-2004-189, District Court of Lincoln County; Petition, p. 1-2 On direct appeal, the Oklahoma Court of Criminal Appeals affirmed Petitioner's convictions. Evans v. State, No. F-2005-673 (Okla. Crim. App. Feb. 22, 2007) (attached to Response as Ex. 3); Petition, p. 2. Petitioner sought state post-conviction relief, but his application was denied and that denial was affirmed on appeal. Petition, p. 3-4; Response, Ex. 7 (Evans v. State, No. PC-2008-352 (Okla. Crim. App. June 19, 2008)).

Petitioner raises ten grounds for relief. In Ground One, he alleges that the trial court erred in not sustaining his motion to suppress. Petition, p. 4. Next, he challenges the sufficiency of the wiretap application, and contends his motion to suppress evidence therefrom should have been granted. Id. at 6. In Ground Three, Petitioner claims that normal investigative techniques were not exhausted before the wiretap application was granted, rendering it invalid. Id. at 7. In Ground Four, Petitioner contends that there was a material variance with regard to three counts of the Information. Petition, p. 8. Fifth, Petitioner claims that charging him with multiple conspiracies was error. Petition, p. 9. In Ground Six, Petitioner claims spoliation of important favorable evidence. Petition, p. 10. Seventh, Petitioner claims that his convictions for both trafficking in methamphetamine and unlawful distribution of marijuana, occurring on the same date, constitute multiple punishments for the same offense. Petition, p. 11. In Ground Eight, Petitioner claims that the trial court erred in allowing a case agent to move from testimony regarding the meaning of code words to his opinion of Petitioner's guilt. Id. at 13. In Grounds Nine and Ten, Petitioner alleges ineffective assistance of trial and appellate counsel, respectively. Petition, p. 14.

2

## I. BACKGROUND[1]

In February 2003, Agent Mark Stewart of the Oklahoma Bureau of Narcotics (OBN) began investigating the sale and distribution of illegal drugs in Lincoln County, Oklahoma. In December of 2003, Agent Stewart acquired a pen register and trap and trace device on Petitioner's phone. In June 2004, the OBN began electronic surveillance of Petitioner's cell phone calls pursuant to a warrant for a wiretap. Approximately 2000 phone calls were recorded between June 16, 2004 and July 28, 2004. Based on the results of Agent Stewart's investigation, including the monitored calls and the assistance of a confidential informant, OBN obtained a search warrant for Petitioner's residence. Upon execution of the search warrant on July 28, 2004, the Petitioner and others were arrested.

## II. STANDARD GOVERNING PETITIONS FOR HABEAS CORPUS

For factual and legal issues that have been adjudicated in state court, a federal district court may only grant a writ of habeas corpus if the state court's adjudication: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court," or (2) "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(1)-(2). A state court's determination is contrary to clearly established federal law if it applies a rule that contradicts the law set forth in Supreme Court cases or confronts a set of facts that are materially

---

[1]This general background is taken from the statement of facts in Petitioner's brief in chief on direct appeal, Response, Ex. 1, p. 3-7, and the State's response brief, Response, Ex. 2.

indistinguishable from a Supreme Court decision, but arrives at a different result. Williams v. Taylor, 529 U.S. 362, 405-406 (2000). A state court's determination involves an unreasonable application of clearly established federal law if it identifies the correct governing legal principle from Supreme Court decisions, but unreasonably applies that principle to the facts of the petitioner's case. Id. at 413. "[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." Id. at 411.

If a state court resolves issues in a summary disposition with little or no legal reasoning, a federal habeas court still owes deference to the result. Paine v. Massie, 339 F.3d 1194, 1198 (10th Cir. 2003). A state court's summary disposition must be upheld unless a federal habeas court is persuaded, after conducting an independent review of the record and pertinent federal law, that the state court's result "unreasonably applies clearly established federal law." Id. (quoting Aycox v. Lytle, 196 F.3d 1174, 1178 (10th Cir. 1999)).

## III. DISCUSSION

### A. GROUNDS ONE, TWO, AND THREE - SUPPRESSION

In Grounds One, Two, and Three, Petitioner alleges that the trial court erred in failing to suppress items discovered pursuant to the search and wiretap warrants. In Ground One, he contends that the search warrant did not particularly describe the place to be searched, effectively resulting in an unlawful general warrant prohibited by the Fourth Amendment.

Response, Ex. 1, p. 6.[2]  In his second and third grounds for relief, Petitioner claims that evidence against him was acquired on the basis of an unlawful wiretap order.  Id. at 7, 9.  He claims that the proper procedure was not followed in obtaining the wiretap warrant because the district attorney did not make a written application to the Attorney General as required by statute.  Id.  He also contends that the application did not specify in enough detail why traditional investigatory techniques were unlikely to accomplish the goals of the investigation.  Id. at 10.

Respondent contends that habeas relief is unavailable on Grounds One, Two and Three because Petitioner had a full and fair opportunity to litigate these Fourth Amendment claims.  Response, p. 6 (citing Stone v. Powell, 428 U.S. 465 (1976)).  The undersigned agrees.

The Supreme Court has held that "where the State has provided an opportunity for full and fair litigation of a Fourth Amendment claim, a state prisoner may not be granted federal habeas corpus relief on the ground that evidence obtained in an unconstitutional search or seizure was introduced at his trial." Stone v. Powell 428 U.S. 465, 494 (1976) (footnotes omitted); accord Miranda v. Cooper, 967 F.2d 392, 401 (10th Cir. 1992).

The record of the state court proceedings demonstrates that Petitioner received a full and fair opportunity to litigate his Fourth Amendment claims.  First, a motion to suppress due

---

[2]Petitioner relies upon the argument contained in his Brief in Chief on appeal, and his brief filed in the appeal of his application for post-conviction relief, both of which are contained in the Response as Exhibits 1 and 6, respectively.

to alleged errors in the search warrant and wiretap warrant application and order was filed on behalf of Petitioner in the trial court, and denied after two days of evidentiary hearing. Tr. of Motion to Suppress (State v. Dover, CF-2004-202, June 13, 2005); Tr. of Motions Hearing, p. 8, 10-13 (State v. Evans, CF-2004-189, June 13, 2005). Moreover, the issue of the legality of the wiretap order, as well as the alleged error in the search warrant description of the property, were specifically raised on direct appeal. Response, Ex. 1 p. 4-12. See Smallwood v. Gibson, 191 F.3d 1257, 1265 (10th Cir. 1999) (affirming denial of federal habeas relief based on alleged Fourth Amendment violations because the "petitioner's appellate counsel presented the issue to the [Oklahoma Court of Criminal Appeals] on direct appeal."); Chavez v. Rodriguez, 540 F.2d 500, 502 (10th Cir. 1976) (holding that a hearing on a motion to suppress and the consideration of the issue on appeal satisfied "[t]he dictates of Stone v. Powell").

The undersigned has considered whether Stone applies to Grounds Two and Three, because Petitioner seeks habeas corpus relief for an alleged violation of an exclusionary rule that is of statutory rather than judicial origin. However, even if the merits of Petitioner's claims in Grounds Two and Three are considered, they present matters of state statutory law that are not cognizable in this federal habeas action. Mehdipour v. Parker, No. 05-6376, 188 Fed. Appx. 716, 719 (10th Cir. July 11, 2006)[3], cert. denied 127 S. Ct. 940 (2007) ("Nor could a reasonable jurist dispute the district court's denial of relief on the claims that the

---

[3]This and any other unpublished disposition cited as persuasive authority pursuant to Tenth Circuit Rule 32.1.

admission of the audiotape violated federal and state law. Section 2254 does not provide relief for violations of state law. <u>See Estelle v. McGuire</u>, 502 U.S. 62, 67 (1991))."[4] Furthermore, a violation of state law can result in a deprivation of the Fourteenth Amendment's Due Process Clause only if the error is "so grossly prejudicial that it fatally infected the trial and denied the fundamental fairness that is the essence of due process." <u>Williamson v. Ward</u>, 110 F.3d 1508, 1522 (10th Cir. 1997) (citations omitted). The Petitioner cannot fulfill this burden.

In this case, the violations alleged by Petitioner with regard to Oklahoma's wiretap statute are technical in nature. He contends that the Oklahoma wiretap statute requires a written application by the district attorney to the Oklahoma Attorney General, who in turn makes written application to the presiding judge of the Oklahoma Court of Criminal Appeals. He contends the district attorney did not submit a written application to the Attorney General for the wiretap in question. Second, he claims that the application did not specify in enough detail why traditional investigatory techniques were unlikely to accomplish the goals of the investigation.

---

[4]The undersigned notes that there is case law in which the federal courts have considered whether a wiretap conformed to the requirements of Oklahoma law. However, these were *Federal* cases in which evidence was obtained pursuant to the *State* wiretap statute. The Federal Wiretap Act provides that the federal courts are to apply state law in such cases, to the extent the state law is stricter than the Federal Wiretap Act. <u>See e.g.</u> <u>United States v. Tavarez</u> 40 F.3d 1136, 1137 (10th Cir. 1994) ("The federal wiretap statute, 18 U.S.C. § 2516(2), requires federal courts to defer to state law 'on the question of the validity of [a] wiretap order obtained in state court under state law.'").

Oklahoma's wiretap law may be found in the Security of Communications Act. See Okla. Stat. tit. 13, §§ 176.1-177.5.

The Oklahoma Court of Criminal Appeals considered Petitioner's argument on direct appeal but found that there was no statutory requirement that a wiretap order be initiated by a written request from the district attorney.  Summary Opinion, p. 3, attached to Response as Ex. 3.  Rather, the Court found that a wiretap order is predicated on an application submitted by the Attorney General, initiated by a law enforcement officer and authorized by the district attorney.  Id.  The application submitted by the Oklahoma Attorney General recited that it was initiated by Agent Stewart, was authorized and approved by the district attorney and set out the basis for the application.  See Trial Tr. Vol. VII, Ex. 1.  Petitioner has not shown that the decision by the Oklahoma Court of Criminal Appeals was contrary to or involved an unreasonable application of clearly established federal law or that it was an unreasonable determination of the facts in light of the evidence presented.  Furthermore, the undersigned finds that the OBN agent did adequately describe the reasons why traditional investigatory techniques would be unavailing,  Trial Tr. Vol. VII, Ex. 1, p. 40-46, and that omission of some details did not affect Petitioner's right to a fundamentally fair trial.  Accordingly, it is recommended that relief be denied on Grounds 1, 2, and 3.

### B.  GROUND FOUR - MATERIAL VARIANCE

Next, Petitioner alleges that a material variance existed between the Information and the evidence adduced at trial.  Specifically, Petitioner alleges that a material variance existed with regard to the date in Count Two (alleging unlawful use of a communication facility), and the description of the conspiracy charge contained in Counts One and Three, which alleged a "conspiracy to conspire." Petition, p. 8.  In considering this claim on appeal, the

Oklahoma Court of Criminal Appeals stated: "As to Proposition 4, [Petitioner] has failed to demonstrate how the trial court's approval of amendments to the Information at trial (one to correct a typographical error, the other to supply a more precise date for the offense) prejudiced him in any way.  We find no error here." Response, Ex. 3, p. 4.

Respondent contends that the "Tenth Circuit Court of Appeals has taken a similar approach to dealing with the issues of variances" and that unless the variance affects the substantial rights of the accused - defined as prejudice caused by the inability to anticipate from the Information what evidence will be presented against him or that causes his exposure to a risk of double jeopardy – no reversible error occurs. Response, p. 10-11.  Respondent contends that Petitioner had full notice of the time frame of the conspiracy, and that the error regarding the description of the conspiracy charges consists of nothing more than a clerical error.  Id. at 13.  The undersigned agrees.

"[I]t is a fundamental precept of federal constitutional law that a 'court cannot permit a defendant to be tried on charges that are not made in the indictment.'" Hunter v. State of New Mexico, 916 F.2d 595, 598 (10th Cir. 1990) (quoting Stirone v. United States, 361 U.S. 212, 217 (1960)). The Sixth Amendment affords every defendant "the right to be informed of the nature and cause of the accusations filed against him."   Id. (citation omitted). Therefore, "[a] fatal variance denies a defendant this fundamental guarantee because it destroys his right to be on notice of the charge brought in the indictment." Id. (citation omitted).  As the Oklahoma Court of Criminal Appeals recognized, however, not every variance between an Information and the proof adduced at trial is "fatal."  Where the

9

charging terms in the Information are not changed, but the evidence at trial proves facts materially different from those alleged in the Information, a court must employ a harmless error analysis when reviewing the variance. Wimbley v. Werholtz, 187 Fed. Appx. 840, 845 (10th Cir. Jun. 30, 2006). Where such a variance exists, "convictions generally have been sustained as long as the proof upon which they are based corresponds to an offense that was clearly set out in the indictment." United States v. Miller, 471 U.S. 130, 136 (1985).

In this case, Petitioner was not deprived of his right to notice of the charge against him. At the close of testimony, the State moved to amend the date of the offense in Count 2 by interlineation from June 29 to June 19, 2004. Trial Tr. Vol. VI, p. 857. The colloquy with regard to the change shows that the Information initially charged Petitioner with unlawful use of a communication device based on a call between he and Tina Chinchilla on June 29, 2004. It, as well as Exhibit 1 to the Harjo[5] hearing, also shows that there were *several* calls between the two during the wiretap period but that there were *no* calls on the date specified in the Information. Trial Tr. Vol. VI, p  859; Trial Tr. Vol. II, Ex. 1. Accordingly, it was clear that the State must have misidentified the date as June 29, 2004. Petitioner cannot reasonably contend that he was either surprised or prejudiced by the State's amendment of the Information to charge him with a conspiracy based on a date in which there actually *were* calls to or from Petitioner and Tina Chinchilla. Petitioner was provided

---

[5]Before alleged coconspirator statements can be admitted against a defendant, the trial court is required to hold an in camera hearing to determine whether a conspiracy existed. Harjo v. State, 797 P.2d 338, 345 (Okla.Crim.App.1990).

with a list and summary of all of the phone calls which the State recorded during the period of the wiretap and found significant, including those between he and Tina Chinchilla, and he extensively cross-examined OBN Agent Stewart with regard the calls – both at the Harjo hearing and at trial.  See Trial Tr. Vol. II, p. 127, 139, 141, 145, 150, 151, 156, 167 and Ex. 1; Trial Tr. Vol IV, p. 463, 562, 563.  See also Trial Tr. Vol. III, p. 236-243, 247-249.

Petitioner's claim regarding the wording of the conspiracy charges is even less compelling.  Petitioner has pointed to no prejudice related to these typographical errors and the undersigned finds none.  Petitioner vigorously defended the conspiracy charges through cross-examination of the primary OBN Agent, Agent Stewart.  He can point to nothing indicating that his defense was limited to attacking evidence of a "conspiracy to conspire," and it is absurd to contend otherwise.  Petitioner did move for a judgment of acquittal based on the legal argument that there is "no such thing as a conspiracy to conspire," but his factual defense of the charges was clearly directed toward undermining the State's claim that the investigation showed a conspiracy. See Trial Tr. Vol. VI, p. 860.

Petitioner "has shown no prejudice to his ability to defend himself at trial, to the general fairness of the trial, or to the [Information's] sufficiency to bar subsequent prosecutions."  United States v. Miller, 471 U.S. at 138 n. 5. Because Petitioner can show no prejudice resulting from the variance he is not entitled to habeas relief.

## C.  GROUNDS FIVE AND SEVEN – DOUBLE JEOPARDY

In Ground Five, Petitioner claims that his prosecution for both a conspiracy to traffic methamphetamine and a conspiracy to traffic marijuana (Counts 1 and 3) was violative of

the Double Jeopardy Clause of the Fifth Amendment, made applicable to the states through the Fourteenth Amendment. Petition, p. 9.  In Ground Seven, he claims that convicting him for both trafficking in methamphetamine and distributing marijuana (Counts 4 and 5)  based on activities from the same informant on the same day constitutes double punishment, also in violation of the Double Jeopardy Clause.  Id. at 11-12.  In disposing of these alleged errors on direct appeal, the Oklahoma Court of Criminal Appeals held:

> the two conspiracies alleged by the State involved different plans and different participants; hence, it was not improper to charge them as discrete crimes.
>
> [Petitioner's] convictions for trafficking in methamphetamine, and distributing marijuana, based on activities with the same informant on the same day did not constitute double punishment; each offense required proof of a fact that the other did not, and given the differences between the two statutes involved, we discern no legislative intention to treat the offenses as parts of a single criminal act for purposes of punishment.

Response, Ex. 3, p. 4-5.

Respondent contends that a federal court reviewing a double jeopardy claim must be deferential to the state court's interpretation of its own statutes.  Response, p. 15. He claims that the trafficking conspiracy charges involved two separate plans which occurred at different times, involved two separate drugs, and involved two completely separate groups of participants (except for Petitioner), making it proper to charge them as two separate crimes.  Id. at 15, 17.  He claims that the charge of trafficking in methamphetamine and the charge of distribution of marijuana involved proof of different facts.  Response, p. 18.  He claims not only that  different drugs were involved, but that proof of a trafficking quantity of methamphetamine was required for Count 4 and distribution of marijuana falls under a

criminal statute separate from that governing trafficking.   Id. at 18.

The Double Jeopardy Clause of the Fifth Amendment, as applied to the States through the Fourteenth Amendment, protects against successive prosecutions for the same offense after acquittal or conviction and against multiple criminal punishments for the same offense. Monge v. California, 524 U.S. 721, 727-28 (1998) (citing North Carolina v. Pearce, 395 U.S. 711, 717 (1969)); see also Anderson v. Mullin, 327 F.3d 1148, 1153-54 (10th Cir. 2003). Grounds Five and Seven are both based on Petitioner's claim that he was subjected to multiple punishments for the same offense.

This Court's review of a multiple punishment double jeopardy claim is limited to determining whether the sentencing court imposed a greater punishment than the legislature intended.   Brown v. Ohio, 432 U.S. 161, 165 (1977) ("Where consecutive sentences are imposed at a single criminal trial, the role of the constitutional guarantee is limited to assuring that the court does not exceed its legislative authorization by imposing multiple punishments for the same offense."); see also Dennis v. Poppel, 222 F.3d 1245, 1251-53 (10th Cir. 2000) (looking to legislative intent to evaluate a multiple punishment double jeopardy claim).   The federal courts are "bound by a state court's determination of the legislature's intent" in deciding whether a state legislature intended to prescribe cumulative punishments for a single incident.   Cummings v. Evans, 161 F.3d 610, 615 (10th Cir. 1998) (quotation omitted).   Thus, if the highest court of a state determines that the legislature intended to punish separate offenses cumulatively, a federal habeas court must defer to that conclusion.   Id.; Mansfield v. Champion, 992 F.2d 1098, 1100 (10th Cir. 1993). Similarly,

where the state legislature intended to punish conduct as distinct offenses, separate sentences are constitutionally permissible.  Cf. Albernaz v. United States,  450 U.S. 333, 344 (1981).

In Petitioner's direct appeal, the Oklahoma Court of Criminal Appeals applied its decision in Bogue v. State, 556 P.2d 272, 274 (Okla. Crim. App. 1976), which in turn relied upon the United States Supreme Court decision in Blockburger v. United States, 284 U.S. 299, 304 (1932).  In Blockburger, the Supreme Court held that "where the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one, is whether each provision requires proof of a fact which the other does not." Id.  Here, the Oklahoma Court of Criminal Appeals first found that the two conspiracy charges involved different plans and different participants. A review of the essential elements of the crime of conspiracy and the felony underlying each charge, as well as the record here, supports this finding.  The elements of conspiracy are:

> (1) an agreement by two or more persons; (2)  to [commit the crime or conduct charged]; (3) the defendant was a party to the agreement at the time it was made or knowingly became a party to the agreement at some time after it was made; and (4) an overt act by one or more of the parties performed subsequent to the formation of the agreement.

Oklahoma Uniform Jury Instructions (OUJI)-CR 2-17 (2nd ed.).  In Count 1, the underlying crime or conduct that was charged was trafficking in methamphetamine.  The elements of the crime of trafficking in methamphetamine are:

- · knowingly;
- · distributing, manufacturing, bringing into Oklahoma, or possessing;
- · twenty grams or more of a mixture or substance containing a detectable amount of;
- · methamphetamine.

14

Okla. Stat. tit. 63 § 2-415(C)(4); OUJI-CR 6-13 (2nd ed.).  The second conspiracy charge, contained in Count 3, was conspiracy to traffic in marijuana.  The essential elements of that crime are:

- · knowingly;
- · distributing, manufacturing, bringing into Oklahoma, or possessing;
- · twenty-five pounds or more of a mixture or substance containing a detectable amount  of;
- · marijuana.

Okla. Stat. tit. 63 § 2-415(C)(1); OUJI-CR 6-13 (2nd ed.).  Thus, the Oklahoma Court of Criminal Appeals correctly noted that each of the conspiracy charges required proof of one fact that the other did not - that is the requisite quantity of the drug involved in the underlying trafficking charge.  Moreover, the agreement – which is the first element of the crime of conspiracy – was between different groups of individuals, and the overt acts were also different for each charge.  See Trial Tr. Vol. III, p. 317-23, 345-46,  351-61; Vol. IV, p. 385-86, 408-412, 451-56

The Oklahoma Court of Criminal Appeals also found that the methamphetamine trafficking charge and the marijuana distribution charge required proof of a fact that the other did not, and that there was no legislative history indicating that the offenses should be treated as a single criminal act for purposes of punishment.  Thus, it is clear that the "same evidence" test established in Blockburger was used by the Oklahoma Court of Criminal Appeals to determine whether the two punishments stemming from Counts 4 and 5 were violative of the prohibition against double jeopardy, and this Court must give deference to its finding that the same evidence was not required to convict Petitioner of these two offenses.

The elements of the crime of distribution of a controlled dangerous substance are (1) knowingly/intentionally; (2) distributing; (3) a controlled dangerous substance. OUJI-CR 6-2 (2nd ed.). However, as noted previously, the crime of trafficking requires proof of a certain minimum quantity of the involved drug. Okla. Stat. tit. 63 § 2-415(C)(4); OUJI-CR 6-13 (2nd ed.). Proof of this fact is not necessary to sustain a conviction for distribution. Accordingly, the decision of the Oklahoma Court of Criminal Appeals is neither contrary to nor an unreasonable application of Federal law and it is recommended that relief be denied on Grounds Five and Seven.[6]

### D. GROUND SIX - NEGLIGENT SPOLIATION

In Ground Six, Petitioner contends that the State negligently failed to preserve the July 10, 2004 audio recording made of one of the transactions between Petitioner and the State's informant. Petition, p. 10. He claims that the failure of the trial court to remedy the negligent spoliation through either suppression of evidence regarding the encounter, or an instruction that there is a rebuttable presumption that the evidence would have been

---

[6]Petitioner relies on Watkins v. State, 855 P.2d 141 (Okla. Crim. App. 1992), a case finding a double jeopardy violation in relation to Okla. Stat. tit. 63, § 2-401(A)(1). In Watkins, the appellant had been arrested "for causing a single package containing two types of controlled substances to be shipped to Oklahoma from California." The Oklahoma Court of Criminal Appeals applied the Blockburger same evidence test and found that the Double Jeopardy Clause was violated because the appellant had been charged with multiple counts of possession and conspiracy for each of the types of drugs found in the single package and because the elements of each count were the same. The charges arose under Okla. Stat. tit. 63, § 2-401 for possession with intent to distribute "a controlled dangerous substance." The Oklahoma Court of Criminal Appeals found liability could exist for only one count of possession and one count of conspiracy because the statutory prohibition in section 2-401 did not distinguish between types or classifications of drugs. As discussed above, one of the counts in question here required proof of a fact that the other did not. Further, the different drugs in Watkins were shipped in one package. Therefore, Watkins is not controlling.

favorable, was error.  In considering this claim on direct appeal, the Oklahoma Court of Criminal Appeals held: "[Petitioner] fails to allege, much less demonstrate, any bad faith in the loss of a recording of a conversation between [he] and a police witness.  The witness was subject to cross-examination about the conversation.  We find no due process violation here." Response, Ex. 3, p. 4.

Respondent contends that the absence of bad faith on the part of the State is conclusive of Petitioner's claim for habeas relief on this ground.  Response, p. 19.  He also claims that Petitioner has presented nothing to indicate that the negligently destroyed evidence would have been exculpatory.  Id.

In California v. Trombetta, 467 U.S. 479 (1984), the United States Supreme Court held that a State violates a defendant's right to due process pursuant to the Fourteenth Amendment when it destroys material exculpatory evidence. To constitute "material exculpatory evidence," it "must both possess an exculpatory value that was apparent before the evidence was destroyed, and be of such a nature that the defendant would be unable to obtain comparable evidence by other reasonably available means." Id. at 488-89; United States v. Wright, 260 F.3d 568, 570-71 (6th Cir.2001). Subsequent to Trombetta, the Supreme Court held that, when reviewing a spoliation claim involving evidence that was not material and exculpatory but merely "potentially useful," a defendant must demonstrate that the State acted in bad faith in failing to preserve the evidence in order for the petitioner to argue successfully that the State has violated his or her right to due process. Arizona v. Youngblood, 488 U.S. 51, 57-58 (1989).  It is apparent that the recording here was at most

17

"potentially useful," as Petitioner has failed to show that the exculpatory nature of the recording of the informant transaction was apparent before the evidence was destroyed, or that he would be unable to obtain comparable evidence by other means.

Thus, there is no absolute duty to retain all material that is potentially useful in a particular prosecution, and the requirement that a petitioner show bad faith limits the extent of the State's obligation to preserve evidence to "reasonable bounds" and confines it to "that class of cases where the interests of justice most clearly require it." <u>Youngblood</u>, 488 U.S. at 58. Therefore, Petitioner's inability to show bad faith under the <u>Youngblood</u> test renders his spoliation claim meritless

Petitioner specifically alleges that the failure to preserve in this case was negligent, and that is borne out by Agent Stewart's testimony on cross-examination.  Trial Tr. Vol. IV, p. 459-60.  "When the government is negligent, or even grossly negligent, in failing to preserve potentially exculpatory evidence, bad faith is not established." <u>Monzo v. Edwards</u>, 281 F.3d 568, 580 (6th Cir.2002).  Accordingly, the spoliation in this case does not constitute a denial of due process of law and will not support habeas relief.  It is recommended that relief be denied on Ground Six.

### E.  GROUND EIGHT - CASE AGENT TESTIMONY

In Ground Eight, Petitioner claims that the trial court improperly allowed the OBN case agent's testimony to go beyond the meaning of "code words" contained in the wiretapped conversations, to the meaning of conversations in general and his opinion as to whether criminal conduct had occurred.  Petition, p. 13. In reviewing this claim on direct

appeal, the Oklahoma Court of Criminal Appeals stated:

> As to Proposition 8, the trial court did not abuse its discretion in permitting a police witness to testify about certain "code" meanings of words and phrases used by [Petitioner] and his associates in telephone conversations. These interpretations were based on the officer's personal experience and training in drug interdiction, they were helpful to the jury, they did not improperly tell the jury who or what to believe, and the witness was subject to cross-examination about his interpretations.

Response, Ex. 3, p. 5.

Respondent contends that this issue is attacking the evidentiary rulings of the state trial court, and is not cognizable in this action. Response, p. 21. He also argues that in making its ruling, the state court relied extensively on analogous federal precedent regarding expert testimony in narcotics cases. Id.

As with other state law issues on habeas review, this Court can only review state court evidentiary rulings "'to determine whether the error was so grossly prejudicial that it fatally infected the trial and denied the fundamental fairness that is the essence of due process.'" Hooker v. Mullin, 293 F.3d 1232, 1238 (10th Cir. 2002) (quoting Williamson v. Ward, 110 F.3d 1508, 1522 (10th Cir. 1997)). In other words, federal habeas relief does not lie for errors of state law absent a determination that the state court's finding was so arbitrary or capricious as to constitute an independent due process violation. Fields v. Gibson, 277 F.3d 1203, 1220 (10th Cir. 2002) (citing Lewis v. Jeffers, 497 U.S. 764, 780 (1990)). Petitioner's burden is a heavy one; he must show that the State's failure to follow its own law is arbitrary in the constitutional sense, that is, it must shock the judicial conscience. Aycox v. Lytle, 196 F.3d 1174, 1180 (10th Cir.1999).

In light of this heavy burden, Petitioner has failed to show a violation of his right to a fundamentally fair trial. Agent Stewart testified he had a college degree, thirteen years experience with the OBN, and hundreds of hours of specialized training in the investigation of drug crimes. Trial Tr. Vol. III, p. 175-77. He testified that he had personally infiltrated criminal drug organizations 50 to 100 times, and that special slang is often used therein to denote drug activity. Id. at 177-80. Finally, Agent Stewart was extensively cross-examined by Petitioner, and challenged regarding his conclusions as to the meaning of various terms. Trial Tr. Vol. IV, p. 464, 473-77, 489, 492-93, 512, 541, 546-60. Thus, under the applicable standard, the undersigned finds that the admission of OBN agent Mark Stewart's opinion regarding his interpretations of the wiretapped conversations was not so grossly prejudicial as to rise to the level of a constitutional violation. Cf. Vasquez- Torrez v. Dorsey, No. 94-2199, 1995 WL 539575 at *2 (10th Cir. Sept. 11, 1995) (trial court's admission of police officer's opinion evidence concerning factual implications of amount of cash found on petitioner and quantity and packaging of cocaine found by fellow officers did not render petitioner's trial fundamentally unfair in the constitutional sense); see also Cummings v. Artuz, 237 F. Supp.2d 475 (S.D. N.Y. 2002) (no constitutional error resulted from detective's testimony about "general street- level narcotics 'trafficking'" and admission of this testimony did not deprive petitioner of a fundamentally fair trial); United States v. Robinson, 978 F.2d 1554, 1564-65 (10th Cir. 1992) (expert testimony by police officer assisted the trier of fact in understanding that evidence found in defendant's apartment was probative of the defendant's connection to drug trafficking). Petitioner's claim for federal habeas relief based

20

upon the admission of this opinion evidence is without merit, and it is recommended that relief be denied on Ground Eight.

### F. GROUNDS NINE AND TEN-INEFFECTIVE ASSISTANCE OF COUNSEL

In his last two grounds for relief, Petitioner claims that he received ineffective assistance of trial and appellate counsel.  Petition, p. 14.  Specifically, he claims that his counsel (who represented him at trial and on appeal) was ineffective because (1) OBN Agent Stewart was allowed "to tell the jury what to think" yet an expert in the terminology used in gamecock fighting was not called to refute Agent Stewart's testimony; (2) counsel's "outside" conduct, specifically the Oklahoma Bar Association's investigation of ethical problems, adversely affected his representation; (3) appellate counsel wrote only a thirty-one page appeal brief and no reply brief;  and (4) appellate counsel did not communicate with Petitioner during the pendency or at the conclusion of his appeal.  Response, Ex. 6, p. 28-32 (Petitioner's brief on appeal from denial of state post-conviction relief).

In its order affirming the denial of post-conviction relief, the Oklahoma Court of Criminal Appeals stated:

> We **FIND** Petitioner has not established appellate counsel's performance was deficient, or that the result of his appeal was not reliable and fair.  Regarding his claim of ineffective assistance of trial counsel, any issue that could have been raised in Petitioner's direct appeal, but was not, is waived, and may not be the basis of a post-conviction application.  Further all legal issues previously raised and ruled upon are res judicata and may not be the basis of a subsequent post-conviction application.

Response, Ex. 7, p. 2 (Evans v. State, PC-2008-352, Order Affirming Denial of Post-Conviction Relief (Okla. Crim. App. June 19, 2008)).

Respondent contends that trial counsel was not ineffective for failing to call an expert on the terminology used in gamecock fighting because he thoroughly cross-examined the OBN agent on whether or not certain code words could be associated with gamecock fighting as well as drug activity.  Response, p. 27.  He also claims that Petitioner cannot show prejudice from any ineffective assistance due to the overwhelming evidence adduced at trial as to Petitioner's guilt.  Id. at 28.  With regard to ineffective assistance of appellate counsel, Respondent contends that Petitioner has failed to identify any issue which he wished counsel to raise but which was not raised. Response, p. 30.  He further contends that appellate counsel's failure to take all fifty pages of the limit for appellate briefs, and his failure to file a reply brief, do not constitute ineffective assistance.  Response, p. 30-31.  He specifically claims that he is unaware of any appellate judge who disapproves of concise writing, and that a reply brief cannot include new issues.  Id.  Finally, Respondent claims that appellate counsel's failure to communicate with Petitioner after the appeal had been briefed could not have led to any omitted issues on appeal, and that counsel's own legal problems or general unfitness to practice law is not actionable absent a showing of deficient performance.  Id. at 25-26, 31-32.

To establish that counsel was ineffective, a habeas petitioner must show (1) counsel's performance was constitutionally deficient and (2) counsel's deficient performance was prejudicial.  Strickland v. Washington, 466 U.S. 668, 687 (1984).  Performance is deficient if counsel's "representation [falls] below an objective standard of reasonableness." Id. at 688.  Errors are prejudicial if there is "a reasonable probability that, but for counsel's

unprofessional errors, the result of the proceeding would have been different." Id. at 694. Counsel's performance is evaluated from the attorney's perspective at the time the assistance is rendered and considered in light of all the circumstances prevailing at that time. Id. at 689. There is a strong presumption that counsel's actions fell within the "wide range of reasonable professional assistance." Id. Because both deficient performance and prejudice must be established to prove ineffective assistance, it is appropriate to consider whether prejudice is shown from an alleged error without determining whether counsel performed deficiently. Id. at 697.

Additionally, although a pro se litigant is entitled to a liberal construction of his pleadings, he is obligated nonetheless to "state the facts supporting each ground." Rule 2(b), Rules Governing Section 2254 Cases. The broad reading of the petition does not relieve a petitioner "of the burden of alleging sufficient facts on which a recognized legal claim could be based." Hall v. Bellmon, 935 F.2d 1106, 1110 (10th Cir. 1991). "[N]aked allegations" in a habeas petition are insufficient to establish an entitlement to relief. Ruark v. Gunter, 958 F.2d 318, 319 (10th Cir. 1992) (per curiam).

As Petitioner claims that counsel's personal legal difficulties affected his performance as both trial and appellate counsel, this issue will be addressed first. Petitioner claims it was "no secret" that counsel was having legal problems and that the Oklahoma Bar Association was investigating ethical problems. Response, Ex. 6, p. 29. He claims there "is no possible way [counsel] devoted his full attention to this trial" and that the outcome of the trial was therefore affected. Id. at 30. Petitioner goes on to "attempt to tell this Court what [counsel]

23

was thinking while trying to represent" him, and surmises that counsel "was thinking how he could get money from Petitioner and give as little representation as possible." He also claims that counsel's filing of a thirty-one page brief and no reply brief is reflective of the effects of his personal legal troubles on his representation  Id. at 30-31. He makes a similar claim regarding counsel's alleged failure to communicate with him after briefing was completed, arguing that counsel's failure to mail a copy of the decision "could very well have affected the [timely] filing of his habeas [petition]." Id. at 32.

First, the fact that counsel may have been struggling with personal issues at the same time as his representation of Petitioner does not in and of itself establish ineffective assistance of counsel:

> Similarly, we will not conclude [Petitioner's] appellate counsel was ineffective based solely on [his] allegations that counsel suffered from alcoholism and personal problems while representing [Petitioner]. Instead, [Petitioner] must show the alcoholism and personal problems had "'some adverse effect upon the effectiveness of counsel's representation or has produced some other prejudice to the defense.'"

Ives v. Boone, No. 02-6397, 101 Fed. Appx. 274, 295 (10th Cir. June 7, 2004) (citations omitted).  Petitioner's arrogations as to counsel's thoughts during his trial and appeal do not warrant any consideration.

Second, for the reasons discussed below, neither the length of the brief in chief filed by counsel on appeal nor counsel's failure to file a reply brief constitute ineffective assistance of counsel.  The same is true of Petitioner's claim that counsel failed to communicate with him during the pendency and at the conclusion of the appeal.  The only

alleged prejudice Petitioner points to is that his habeas petition *could* have been untimely, not that it was untimely.  Accordingly, the only specific effects of counsel's personal problems which were identified by Petitioner do not constitute ineffective assistance. Without a showing of ineffective assistance, counsel's personal problems are irrelevant to this Court's inquiry.

Turning to Petitioner's claim of ineffective assistance of trial counsel, it is clear from the record that Petitioner's trial counsel's strategy was to attempt to get the wiretap evidence suppressed, and to discredit the primary witness against Petitioner - Agent Stewart.  An evidentiary hearing was held over two days on a motion to suppress the intercepted phone calls.  Tr. of Motion to Suppress (State v. Dover, CF-2004-2002, June 13, 15, 2005); Tr. of Motions Hr'g (State v. Evans, CF-2004-189, June 13, 2005).  Although trial counsel was unsuccessful in getting the evidence suppressed, the undersigned's thorough review of the trial transcripts reveals that trial counsel vigorously cross-examined Agent Stewart regarding many of the calls, including questions regarding the use of code words that could equally apply to gamecock fighting.  Finally the decision whether to retain an expert is a matter of trial strategy; although counsel took a different approach than that now desired by Petitioner, he zealously pursued the issue through his cross-examination of Agent Stewart:

> Decisions based on trial strategy only rise to the level of ineffective assistance of counsel if they are "completely unreasonable, not merely wrong, so that they bear no relationship to a possible defense strategy." Fox v. Ward, 200 F.3d 1286, 1296 (10th Cir.2000) (quotation and alteration omitted); see also Valenzuela v. United States, 261 F.3d 694, 699-700 (7th Cir.2001) (holding that "a lawyer's decision to call or not to call a witness is a strategic decision generally not subject to review" (quotation and alteration omitted)); United

States v. Smith, 198 F.3d 377, 386 (2nd Cir.1999) ("The decision whether to call any witnesses on behalf of the defendant, and if so which witnesses to call, is a tactical decision of the sort engaged in by defense attorneys in almost every trial." (quotation omitted)).

Jones v. Suthers, No. 03-1414, 130 Fed. Appx. 235, 244 (10th Cir. April 19, 2005). It is certainly reasonable for counsel to decide that calling an expert on the issue of gamecock terminology would not be as effective as cross-examining Agent Stewart regarding the possibility that the code words he heard referred to gamecock fighting rather than drug activity. In fact, the very opposite line of cross-examination could have been taken by the State against any expert Petitioner employed, rendering the expert witness testimony of virtually no net effect or worse, even bolstering Agent Stewart's opinion. Accordingly, relief should be denied on Petitioner's claim that trial counsel was ineffective for failing to retain an expert on gamecock fighting terminology.

Relief should be denied on Petitioner's claim of ineffective assistance of appellate counsel as well. In complaining about the length of counsel's brief, Petitioner is presumably alleging that appellate counsel should have asserted additional claims on direct appeal. In analyzing an ineffective assistance of appellate counsel claim based upon the failure to raise an issue on appeal, a habeas court should:

> [L]ook to the merits of the omitted issue, generally in relation to the other arguments counsel did pursue. If the omitted issue is so plainly meritorious that it would have been unreasonable to winnow it out even from an otherwise strong appeal, its omission may directly establish deficient performance; if the omitted issue has merit but is not so compelling, the case for deficient performance is more complicated, requiring an assessment of the issue relative to the rest of the appeal, and deferential consideration must be given to any professional judgment involved in its omission; of course, if the issue is

26

meritless, its omission will not constitute deficient performance.

Cargle v. Mullin, 317 F.3d 1196, 1202 (10th Cir. 2003) (citations and quotations omitted). Unless there is a reasonable probability that the omitted claim would have resulted in the provision of relief on appeal, there is no ineffective assistance of appellate counsel.  Neill v. Gibson, 278 F.3d 1044, 1057 n.5 (10th Cir. 2001).   The undersigned finds that this claimed deficiency in appellate counsel's representation is not alleged with sufficient specificity to enable review on the merits.  Petitioner has not argued that appellate counsel omitted any particular issue, making it impossible to review the merits in light of the test in Cargle and Neill.  Finally, to the extent Petitioner argues that the length of the brief alone constitutes ineffective assistance, the undersigned finds "there is no correlation between the length of a brief and its quality." Nguyen v. Reynolds  131 F.3d 1340, 1351 (10th Cir. 1997).

Petitioner's related claim that appellate counsel was ineffective for failing to file a reply brief is similarly unpersuasive because he has failed to allege what should have been addressed, or even how a failure to do so prejudiced his chances of success on appeal.  See Owens v. Ward, No. 02-CV-607-JHP-SAJ, 2006 WL 2850314, at *10 (N.D. Okla. Sept. 29, 2006) ("Petitioner fails to explain how the result of the appeal would have been different had appellate counsel filed the pro se reply brief.").

Finally, as noted above, Petitioner's claim that appellate counsel failed to adequately communicate with him – and that he delayed so long in providing a copy of the decision affirming his convictions that it could have affected the timeliness of his habeas petition – cannot alone constitute ineffective assistance.  Petitioner has not pointed to any ill effect from

27

counsel's lack of communication (which he alleges occurred after the brief in chief was filed). Petitioner's allegation that his habeas petition could have been untimely filed as a result is insufficient - real prejudice must be shown.

In light of the foregoing, Petitioner's claims of ineffective assistance of trial and appellate counsel are without merit.  It is therefore recommended that relief be denied on Grounds Nine and Ten.

## **RECOMMENDATION**

For the reasons set forth above, it is recommended that the petition for a writ of habeas corpus be denied. The Petitioner is advised of his right to file an objection to this Report and Recommendation with the Clerk of this Court by October 16, 2008, in accordance with 28 U.S.C. § 636 and Local Civil Rule 72.1. The Petitioner is further advised that failure to make timely objection to this Report and Recommendation waives his right to appellate review of both factual and legal questions contained herein. Moore v. United States, 950 F.2d 656 (10th Cir. 1991).  This Report and Recommendation disposes of the issues referred to the undersigned Magistrate Judge in the captioned matter.

**ENTERED this 26th day of September, 2008.**

_____
DOYLE W. ARGO
UNITED STATES MAGISTRATE JUDGE

28